## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HELEN JORGE, | Civil Action No. 14-cv-11179-DPW |
| Plaintiff, | |
| CAROLYN W. COLVIN, | **REPORT AND RECOMMENDATION** |
| Acting Commissioner, | |
| Social Security Administration | |
| Defendant. | |

**CABELL, Magistrate Judge**:

This matter comes before the Court upon a motion by the plaintiff Helen Jorge ("Plaintiff")

to reverse or remand a final decision by the Commissioner of Social Security ("Commissioner")

denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), and a cross motion by Commissioner to affirm the decision. (Dkt. Nos.

22, 26). For the reasons discussed below, it is respectfully recommended that the motion to affirm

the Commissioner's decision be GRANTED and the motion to reverse the decision by the

Commissioner be DENIED.

### I.    PROCEDURAL HISTORY

On June 1, 2011 Plaintiff filed concurrent applications for DIB under Title II of the Social

Security Act and for SSI under Title XVI of the Social Security Act. *Social Security*

*Administration Record of Social Security Proceedings*, at page 18 (hereinafter "(R. __)"); (Dkt.

No. 11). Plaintiff alleges that she has been disabled since September 10, 2010 due to lower back

pain, diabetes, obesity and migraines. (R. 18). On August 30, 2011 the SSA determined that

Plaintiff was not entitled to DIB or SSI. On January 20, 2012 the SSA affirmed its determination

after reconsideration. (R. 133). Plaintiff requested an administrative hearing and received one

before Administrative Law Judge Stephen C. Fulton ("the ALJ"), on December 6, 2012.  (R. 31-87).  On December 14, 2012, the ALJ determined in a written decision that Plaintiff was not disabled and therefore was ineligible for DIB and SSI.  (R. 15-27).  On January 17, 2014 the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner. (R. 1-3).  Plaintiff filed this action on March 22, 2014.

## II.   FACTS

### a.  Personal and Employment History

Plaintiff was born on January 21, 1970 and was 40 at the time of the alleged onset of her disability in 2010.  (R. 214).  She is a high school graduate and has no schooling beyond 12th grade. (R. 227).  Plaintiff's past relevant work was as a material coordinator, material clerk, and medical assistant.  (R. 36-47, 83).

### b.  Plaintiff's Physicians' Opinions

Plaintiff was working in 2007 but stopped after she was required to undergo abdominal surgery, and never returned to work thereafter.  (R. 45-46).  The record reflects somewhat of a gap in Plaintiff's medical condition between then and 2009.  In 2009 Plaintiff began experiencing migraine headaches.  (R. 359).  Sometime thereafter, Plaintiff also began to experience lower back pain.  The earliest medical record surrounding Plaintiff's back pain is March 5, 2010, when Dr. Younan of the Pain Center of North Shore indicated that Plaintiff complained of back and bilateral lower extremity pain.  (R. 308).  On examination, Dr. Younan noted that Plaintiff had some tenderness and limited range of movement, but a straight leg test was negative, and there were no focal motor or sensory deficits.  (R. 308).  An MRI of Plaintiff's lumbar spine revealed evidence of disc bulging with degenerative disk disease and facet joint disease at L4-L5 and L5-S1, leading Dr. Younan to discuss doing a lumbar facet block with Plaintiff.  (R. 308).

2

On January 20, 2011, Plaintiff injured herself while shoveling and consulted with her primary care physician, Dr. Subroto Bhattacharya of Danvers Family Doctors Inc.  (R. 333).  He noted that Plaintiff was known to have chronic backaches and disc degenerative disease with right sided sciatica brought on by shoveling.  (Id.).  Dr. Bhattacharya indicated that he would have Plaintiff see a local pain specialist for consideration of a cortisone epidural.  (R. 335).

On January 26, 2011 Plaintiff again saw Dr. Bhattacharya for a physical examination.  He noted among other things that Plaintiff had not been compliant with her medications because she had gone through a difficult year and had been busy with her family and 4 children.  He also noted that Plaintiff experienced significant low back pain with right sciatica traveling all the way to the foot.  He further noted that Plaintiff was morbidly obese.  (R. 329-330).  Dr. Bhattacharya encouraged Plaintiff to exercise daily, counseled her on medication compliance and lifestyle changes to care for diabetes and hypertension, and scheduled Plaintiff to get her cortisone shot. (R. 332).

Approximately two weeks later, on February 10, 2011, Plaintiff visited again with Dr. Younan in connection with her right lower extremity pain.  (R. 307).  Dr. Younan indicated that Plaintiff appeared to be in some distress due to pain, and demonstrated an antalgic gait favoring her right lower extremity pain.  (R. 307).  Dr. Younan opined that Plaintiff's presentation was consistent with lumbar radiculopathy and he recommended her doing a transforaminal epidural injection to see if that would provide Plaintiff any relief.  (R. 307).  On March 3, 2011 Dr. Younan provided Plaintiff L4-L5 and L5-S1 bilateral lumbar facet block injections.  (R. 318).  Dr. Younan also provided Plaintiff L4-L5 and L5-S1 transforaminal nerve root block injections on the left on March 23, 2011, and the right on April 13, 2011.  (R. 315-316).  On July 13, 2011 Dr. Younan saw Plaintiff and noted that she responded favorably to transforaminal epidural injection(s) but her

back pain was still persistent. (R. 314).  As such, Dr. Younan recommended doing lumbar facet blocks to see if that would give Plaintiff some relief.  (R. 314).

On July 26, 2011 Plaintiff visited Dr. Bhattacharya and reported that she had been taking the medication Triamterene Hydrochlorothiazide, which, she reported, was causing her to experience migraine headaches and gastrointestinal issues. (R. 326).  Dr. Bhattacharya noted that Plaintiff was maintaining poor control of her diabetes mellitus because of her weight issues and he strongly encouraged her to exercise and to lose weight.  (R. 328).  Dr. Bhattacharya observed that Plaintiff could walk without an assistive device and her spine's contour was normal, although she did have a mild lumbosacral spasm.  (R. 327-28).  Dr. Younan the following day provided Plaintiff with a lumbar facet block at L4-L5 and L5-S1 bilaterally.  (R. 313).

Plaintiff next saw Dr. Bhattacharya about two months later, on September 22, 2011.  He noted that Plaintiff's weight had started to decrease and her blood pressure was better controlled. (R. 323).  He also noted that Plaintiff had degenerative disc disease with spinal stenosis and restricted mobility, and opined that her hypertension and diabetes should improve with weight loss.  (R. 324-35).

Plaintiff visited Dr. Bhattacharya next on October 24, 2011.  He noted that she was still continuing to experience back pain, which he linked to her weight. (R. 321).  Dr. Bhattacharya indicated that Plaintiff had no strategy for weight loss and further was not "keen on bariatric surgery."  (R. 321).  Dr. Bhattacharya again encouraged Plaintiff to lose weight.  (R. 322).

Plaintiff next saw Dr. Bhattacharya on November 28, 2011 following an incident where Plaintiff had fallen and hurt her right wrist. (R. 340).  Dr. Bhattacharya noted that Plaintiff did not want to go back to see Dr. Younan, despite the fact that her last cortisone shot had been in June of 2011, because Dr. Younan recommended radiofrequency ablation.  (R. 340).  Dr. Bhattacharya

said he would refer Plaintiff to another doctor, Dr. Fields, for a spinal epidural cortisone shot.  He

again encouraged Plaintiff to lose weight.  (R. 342).

Plaintiff saw Dr. Bhattacharya again on December 28, 2011.  He noted that Plaintiff's wrist

had recovered from her fall.  (R. 337).  It appears as though Plaintiff had never visited Dr. Fields

for a cortisone shot because Dr. Bhattacharya again indicated that her last shot had been in June of

2011.  (R. 337).  Dr. Bhattacharya stated that Plaintiff has "[c]hronic back pain on standing more

than one hours duration [and w]alking distance is reduced to 200 yards of continuous walking

before having to rest."  (R. 337).  At this same appointment, however, Plaintiff indicated that she

exercised every day, did housework, used the treadmill and bicycle, and stretched.  (R. 338).  Dr.

Bhattacharya opined that Plaintiff had full strength in her upper and lower extremities, no spinal

deformity, and could walk without assistive devices.  Nonetheless, he also noted that she "does

have a case for persistent chronic back pain causing her to be disabled."  (R. 339).

Plaintiff did not see Dr. Bhattacharya (or apparently anyone else related to her pertinent

ailments) for almost one year.  On December 3, 2012, Dr. Bhattacharya saw Plaintiff and then

drafted a letter to support her upcoming disability hearing.  In it he stated that he had evaluated her

that day for "her ongoing chronic intractable back pain that has not responded to multiple steroid

shots or physical therapy."  He stated that she was not a good candidate for surgery, and that her

ability to exercise and work was therefore reduced, and that her diabetes was thus "slowly spiraling

out of control."  He opined that she was "not capable of any form of sustained work for more than

[a] half hour a day."  He further opined that she was "truly struggling with the back pain and the

comorbid diseases do not help."  (R. 356).

c.   State Agency Opinions

On August 30, 2011 the SSA had an independent examiner, Dr. Jane McInerny, review the record and complete a case analysis of Plaintiff's condition. (R. 88-103).  Dr. McInerny noted that Plaintiff's diagnoses included severe disorders of the back – discogenic and degenerative, non-severe obesity, non-severe diabetes mellitus, and non-severe migraines.  (R. 91-92).  Dr. McInerny then assessed Plaintiff's physical residual functional capacity ("RFC") and opined that: Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; must periodically alternate sitting and standing to relieve pain; can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (R. 92-93).  Dr. McInerny concluded that Plaintiff was not disabled. (R. 103).   The SSA subsequently denied Plaintiff's applications that same day.

On January 19, 2012 Dr. Marcia Lipski reviewed Plaintiff's records in connection with Plaintiff's request for reconsideration of the denial of her applications.  (R. 109-117).  Dr. Lipski also noted that Plaintiff's diagnoses included severe disorders of the back – discogenic and degenerative, severe obesity, non-severe diabetes mellitus, and non-severe migraines.  (R. 114). Dr. Lipski assessed Plaintiff's RFC and opined that: Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or walk for 4 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. (R. 114-15).  Dr. Lipski concluded that Plaintiff was able to do work as "generally performed in the National Economy," and was not disabled. (R. 116-117).

    d.  Evidence from the ALJ Hearing

On December 6, 2012, Plaintiff appeared before the ALJ for an administrative hearing along with her attorney representative. (R. 31). Plaintiff began by describing her work history over the previous 15 years. Plaintiff stated that from 1997-1998 she worked as an "ECO coordinator" for a company that made transformers for televisions, CAT scan machines, and ultrasound machines. (R. 37-38). Plaintiff described that she transferred paperwork between engineers and retrieved their files. (R. 38-39). From 1998 to 2007 Plaintiff had two successive jobs involving "material management." The first position was at a meat company, from 1998 to 2004, and entailed overseeing inventory by going up and down stairs to retrieve delivery paperwork, manually entering the delivery information into the company's computer, and also moving heavy boxes filled with administrative supplies a few times per month. (R. 39-40, 44-45). From 2004 to 2007 Plaintiff worked as an assistant in a physician's office and performed various tasks, including escorting patients, taking their blood pressure, helping to do blood work, and some secretarial work which required her to crouch down and bend. (R. 46-47). Plaintiff left this position in 2007 and has not worked since. (R. 46).

Plaintiff also described the workplace accident in which she first hurt her back. She stated that when she was 23 a shelf fell onto her and caused her to fall to the floor. (R. 54). Plaintiff claimed she was told that the discs in her back were broken or cracked and that she could have surgery to correct them. Plaintiff chose against surgery because she was told she could risk being confined to a wheelchair if surgery went poorly. (R. 55). Plaintiff testified that her back pain was the most serious condition preventing her from working but said that she also suffered from migraines, pain in her knees and legs, and liver issues from her diabetes. (R. 49-52). Plaintiff

stated that she had experienced pain when walking since the age of 23, but that it had worsened

over time.  (R. 53).

In terms of medications and treatment to treat her pain, Plaintiff stated that she had been

prescribed Vicodin and Percocet but stopped taking them because they made her "sick to her

stomach," and eventually settled on Tylenol, Aleve, Advil, and Motrin.  (R. 58).  Plaintiff also

stated that she took two to three hot baths a day with Epsom salt, and took medication at night to

help her sleep.  (R. 70-71, 78).

With respect to her daily activities, Plaintiff stated that she previously had been able to do

everyday tasks such as cleaning, cooking, and grocery shopping but could now only perform those

tasks with assistance.  (R. 62-63).  She stated that her migraines also limited her daily activities

when those occurred because she would need to lay down in the dark or apply an ice pack or tiger

balm on her forehead for an entire day in order to alleviate the pain.  (R. 65-66).

The ALJ also took testimony from a vocational expert.  The vocational expert testified that

Plaintiff's past relevant work as a material coordinator, material clerk and medical assistant had

been light and skilled.  (R. 83).  The vocational expert was given two scenarios and then asked in

each to opine whether someone with Plaintiff's background would be capable of performing

certain tasks.

In the first the vocational expert was asked to assume that a person with Plaintiff's

background could lift 20 pounds occasionally, 10 pounds frequently, stand or walk 2 hours over

an 8-hour day, only occasionally climb, balance, stoop, kneel, crouch, or crawl, and would avoid

climbing or using a rope, ladder, or scaffold.  The vocational expert opined that that such a person

could perform Plaintiff's past work with the exception of her job as a medical assistant.  (R. 83-

84).

In the second, the vocational expert assumed that a person with Plaintiff's background could stand or walk for 15 minutes at one time, sit for 30 minutes at one time, less than occasionally climb, stoop, kneel, crouch, or crawl, would avoid reaching over shoulder level, would need unscheduled work breaks for 2 or more hours in an 8-hour workday, and would be absent for 4 or more days per month. The vocational expert concluded that such a person could not perform Plaintiff's past work and would not be able to perform any other jobs in the national or regional economy. (R. 85).

e. The ALJ's Findings

On December 14, 2012, the ALJ found that Plaintiff was not disabled. The ALJ noted that to be found eligible for either DIB or SSI, an applicant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).[1] The ALJ followed a mandated five-step evaluation process to conclude that Plaintiff did not meet this standard.

Step one considers whether the claimant is engaged in substantial gainful activity, because a claimant who is so engaged is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); 416.920(a)(4)(i). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability, September 10, 2010. (R. 20).

Step two considers whether the applicant's impairment is severe within the meaning of the pertinent regulations. 20 C.F.R. § 404.1520(a)(4)(ii); 416.920(a)(4)(ii). The ALJ found that

---

[1] For a DIB claim, a claimant must establish disability on or before the date last insured to be entitled to benefits. *See Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986). The ALJ determined that, based on Plaintiff's earnings record, Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2011." (R. 20).

Plaintiff's impairments were severe because her low back pain and obesity limited her ability to perform some work-related activities.

Steps three four and five operate in tandem. Step three considers whether the severe impairment meets or equals one of the impairments contained in the SSA's List of Impairments. 20 C.F.R. § 404, subpart P, Appendix 1. If so, the claimant is conclusively presumed to be disabled. If not, one moves to step four, which considers whether the applicant's residual functional capacity ("RFC") allows her to perform her past relevant work. If the claimant is capable of performing past relevant work, she is not disabled. If the claimant's RFC in step four does not allow her to perform her past relevant work, the burden shifts to the Commissioner in step five to prove that the claimant "is able to perform other work in the national economy in view of [the claimant's] age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(iii-v); 416.920(a)(4)(iii-v).

Here, the ALJ found at step three that Plaintiff's back condition and obesity did not constitute an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ thus went on to step four and found that Plaintiff had the RFC to lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for a total of 2 hours in an 8-hour day, and sit for a total of 6 hours in an 8-hour day. The ALJ further found that Plaintiff was capable of "occasionally" climbing, balancing, stooping, kneeling, crouching, and crawling, but should avoid climbing ladders, ropes, and scaffolds. In reaching these findings the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible to the extent they were inconsistent with the objective medical evidence in the record. (R. 25). The ALJ also gave "great weight" to the opinion of Dr. Lipski, and "less weight" to the opinions of Dr. McInerny and Dr. Bhattacharya.

(R. 25-26). Given Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing past relevant work as a material coordinator or clerk because this work did not require the performance of work-related activities precluded by the claimant's RFC. The ALJ concluded that Plaintiff therefore was not disabled. (R. 26).

## III.   DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed for two reasons. First, Plaintiff argues that the ALJ improperly weighed the medical opinion evidence. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's migraines were a non-severe impairment. Commissioner argues that the ALJ's decision should be affirmed because substantial evidence supported the ALJ's weighing of the opinion evidence, and supported his findings at step two regarding Plaintiff's severe and non-severe impairments.

### a.   Standard of Review

Review by this Court is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When applying the substantial evidence standard, the Court must bear in mind that it is the province of the Commissioner to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts about the evidence. *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

Reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no "evidence rationally adequate … to justify the conclusion"

of the ALJ. *Roman-Roman v. Comm'r of Social Security*, 114 Fed.Appx. 410, 411 (1st Cir. 2004);

*see also Manso-Pizarro*, 76 F.3d at 16. Thus, if the Commissioner's decision is supported by

substantial evidence, it must be upheld *even if the record could arguably support a different*

*conclusion. See Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir.

1987)(emphasis added).

      b.  Analysis

      The ALJ did not Improperly Weigh the Medical Opinion Evidence

Plaintiff argues that the ALJ misapplied the correct legal standard and improperly weighed

the medical opinions of Dr. Bhattacharya and the non-treating physician, Dr. Lipski, in

determining (at step four) that Plaintiff had the capacity to perform some of her past relevant work.

Plaintiff argues that the ALJ should have accorded more weight to the opinion of Dr. Bhattacharya,

who opined that Plaintiff was disabled. Plaintiff argues that the ALJ additionally failed as required

to explain why he accorded each physician's opinion the weight he did.

An ALJ must "always consider the medical opinions in [the] case record," 20 C.F.R. §§

404.1527(b); 416.927(b), and SSA regulations prioritize the opinions of a claimant's treating

sources. *See* 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1) (stating that "[g]enerally, we give more

weight to the opinion of a source who has examined you than to the opinion of a source who has

not examined you."). The treating source rule provides that the ALJ should give "more weight"

to the opinions of treating physicians because "these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained

from the objective medical findings alone or from reports of individual examinations." 20 C.F.R.

§ 404.1527(c)(2); 416.927(c)(2). Controlling weight will be given to a treating physician's opinion

on the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id.*

In certain circumstances, however, the ALJ does not have to give a treating physician's opinion controlling weight. *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991) (observing that "[t]he law in this circuit does not [always] require ALJs to give greater weight to the opinions of treating physicians"). Indeed, the regulations allow the ALJ to discount the weight given to a treating source opinion where it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians. *Arruda v. Barnhart*, 314 F.Supp.2d 52, 72 (D. Mass. 2004); 20 C.F.R. 404.1527(c)(2)-(4); 416.927(c)(2)-(4). Where controlling weight is not given to a treating source opinion, the ALJ considers several factors to determine what weight to grant the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole. *See Bourinot v. Colvin*, 2015 WL 1456183, at *11 (D. Mass. March 30, 2015) (*citing* 20 C.F.R. § 404.1527(c)(2)-(6); 416.927(c)(2)-(6)).

The Court does not find any error in the ALJ's decision to accord greater weight to Dr. Lipski's opinion. As noted above, and as there is no real dispute, an ALJ may give greater weight to a state agency physician's assessment provided there is good reason for doing so. *See Berrios-Lopez v. Sec'y of Health and Human Services*, 951 F.2d 427, 431 (1st Cir. 1991). Here, the ALJ stated that he did consider Dr. Bhattacharya's opinion in determining Plaintiff's limitations, but based his findings and decision on the "record as a whole," and gave greater weight to Dr. Lipski's opinion of Plaintiff's limitations because they were "consistent with claimant's conservative

treatment, consisting only of epidural steroid injections, but no narcotic medications, ER visits, or hospitalizations." (R. 25). The ALJ explicitly explained that he gave less weight to the opinion of Plaintiff's primary care physician because, although Plaintiff had been referred for epidural steroid injections, "she takes no narcotic medications for pain, and has never been referred to a pain clinic for management of her pain." (R. 26). The ALJ explained that he rejected Dr. Bhattacharya's opinion that Plaintiff could not work any longer than one half hour each day because that opinion was not supported by the doctor's own treatment notes other than by Plaintiff's subjective statements. *Id.*

In that regard, the ALJ went on to give four reasons for rejecting Plaintiff's testimony about having limitations greater than those the ALJ found. First, the ALJ explained that Plaintiff complained of limitations that were not consistent with the medical treatment record. He noted that she had received only "conservative" treatment for her back and had not by contrast required any hospitalizations, emergency room visits, narcotic medications, or referrals to a plain clinic. Second, Plaintiff had rejected an offer of pain relief via radiofrequency ablation, suggesting that her "functional limitation is not as great as she says it is." Third, Plaintiff's testimony regarding significant side effects from some medications was undocumented in the record and she no longer made any complaints to her doctor about migraines or gastrointestinal issues after July of 2011 when she was switched from Triamterene to another medication. Finally, the ALJ noted that there were significant gaps in Plaintiff's treatment history and no notes in the record from December of 2011 to December of 2012 indicating that her symptoms were so severe as to warrant treatment.

In short, the ALJ weighed Dr. Bhattacharya's assessment but found that the record was more consistent with Dr. Lipski's assessment of Plaintiff's limitations and her capacity to perform relevant work. Even assuming for the sake of argument that one could plausibly view the record

as supporting Plaintiff's characterization of her limitations, that would be beside the point because the critical issue before the Court is whether the record as a whole supports the ALJ's findings and conclusions that she had the capacity to perform any of her past relevant work. It does. Given the substantial deference accorded the decisions of the ALJ, there is no basis to overturn the ALJ's decision concluding that Plaintiff was not disabled within the meaning of the pertinent regulations.

To be sure, Plaintiff contends that the explanations the ALJ provided to support the decision reflect key factual misunderstandings. Plaintiff notes that the ALJ found it notable that Plaintiff took no narcotic medications for pain and had not been referred to a clinic for pain management. Plaintiff contends that these assertions are demonstrably incorrect because the record is clear that she was prescribed narcotic medications for pain but stopped taking them when they made her nauseous, and previously saw Dr. Younan of the Pain Center of North Shore for pain management.

This argument has some appeal on its face but loses force when considered in light of the overall record. As noted above, the ALJ specifically noted that Plaintiff took medication that made her sick to her stomach. (R. 25). The ALJ also noted that Plaintiff had seen Dr. Younan of the Pain Center of North Shore on July 13, 2011. (R. 23). Thus, questionable phraseology aside, it does not appear as though the ALJ misunderstood the factual record. Rather, and as the Commissioner points out, it is most likely that the ALJ was focusing on the fact that Plaintiff had not taken prescription pain medication or visited a pain center since July of 2011, *i.e.,* approximately a year and a half before the administrative hearing. Regardless, even assuming the ALJ misstated these factual points, the misstatements are insufficient when compared to the remainder of the record as a whole to cast serious doubt on the reasonableness of the ALJ's decision regarding the extent of Plaintiff's limitations. Where, as here, the ALJ's decision is

otherwise supported by substantial evidence in the record, it is his province, and not the Court's,

to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts

about the evidence. *Irlanda Ortiz,* 955 F.2d at 769.  In according Plaintiff's treating physician's

opinion lesser weight, the regulations did not require the ALJ to expressly state how each factor

was considered, only that there were "good reasons" for the weight given the opinion. *Bourinot*,

2015 WL 1456183, at \*13 (*citing* 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2)).  The ALJ had such

a reasonable basis here in light of the foregoing.

The ALJ did not Err in Determining Plaintiff's Migraines to be a Non-Severe
Impairment

Plaintiff argues that the ALJ erred in failing to credit her migraines as a severe impairment.

Plaintiff argues that the ALJ may have reached this conclusion by relying on a possibly faulty

interpretation of a statement in Dr. Bhattacharya's notes.  On July 26, 2011, Dr. Bhattacharya

wrote that Plaintiff reported having migraine headaches and gastrointestinal upset after taking the

medication Triamterene.  He noted that "*This is the first time that she has shared this with me*" and

he subsequently switched her medication.  Plaintiff contends that the ALJ appears to have

interpreted this statement to mean that Plaintiff had not suffered serious migraines prior to July 26,

2011.  Plaintiff argues that this is demonstrably wrong because an entry in a medical record from

January of 2010 referred to a "History of migraines."  Plaintiff does not herself purport to explain

what the statement means but she offers that it could have meant simply that Plaintiff had just

never previously informed her doctor that the medication caused her uncomfortable side effects,

or that she was not taking the medication in light of its side effects.  Plaintiff suggests that the ALJ,

fueled by his damaging misinterpretation of the phrase, logically concluded that the statement had

to mean that Plaintiff's migraines resulted solely from her use of Triamterene.  Plaintiff appears to

argue that the ALJ then further compounded his error by ignoring her testimony that she suffered

16

debilitating migraines several times a month, and focusing instead on Plaintiff's absence of any emergency room visits or hospitalizations for migraine symptoms.  As such, Plaintiff appears to argue, even if only implicitly, that the ALJ might have concluded that she lacked the capacity to perform relevant past work had he interpreted her physician's statement correctly and given greater weight to her testimony.

This argument lacks force.  Regardless of whether Plaintiff is right or wrong regarding the meaning of Dr. Bhattacharya's statement in his notes, or the meaning the ALJ ascribed to it, the record as a whole easily supports the ALJ's finding that Plaintiff's migraines did not constitute a severe impairment.  While it is true that Plaintiff's medical records contain some references to migraines, those references do not clearly suggest her migraines were as ubiquitous as her back pain and obesity.  On the contrary, the records support the ALJ's findings that the medical records do not indicate that Plaintiff complained of migraines at any time to any treating physician after July 26, 2011, did not have any emergency room visits or hospitalizations for migraine symptoms after that date, and was also not taking any prescribed medication for migraines.  Further, the ALJ was entitled to consider that Dr. Lipski reviewed Plaintiff's records and explicitly found that Plaintiff's migraines were a non-severe impairment. (R. 108-114; 118-124).  Plaintiff did testify to suffering from migraines several times a month but this testimony did not contradict the ALJ's findings as to what the records themselves show, and the ALJ was regardless entitled to reject Plaintiff's testimony as non-credible where it was not consistent with the record as a whole. Accordingly, there is no basis to conclude the ALJ erred when he found Plaintiff's migraines to be a non-severe impairment.

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Defendant's motion to affirm the Commissioner (Dkt. No. 26) be GRANTED and the Plaintiff's motion to reverse the Commissioner (Dkt. No. 22) be DENIED.  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b), will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also, Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  August 17, 2015